Okay, why don't we proceed then with Mrs. Hughes for the appellant, Lopez. Okay, good morning your honors and may it please the court, Christy Hughes on behalf of Mr. Lopez. The district court abused its discretion when it rejected Mr. Lopez's arrest proffer because he tried to file it ex parte. The court was concerned that if it sealed the proffer, the government couldn't challenge Mr. Lopez's jurisdiction, even though it would have the chance to do that just a few weeks later at trial. But the court never considered Mr. Lopez's fair trial interests. First, that forcing him to give the government all the details of his testimony before trial would mean that he had to prematurely decide whether to give up his Fifth Amendment rights in order to defend himself. And also that unsealing the proffer would put him in a serious disadvantage because it would give the government a detailed roadmap of his entire defense. The court's decision was not in line with Carpenter, which held that before deciding whether to seal a duress proffer, the district court has to first consider and balance all of the interests and then exercise its discretion in light of the facts of the particular case. So here, the problem with the district court's reasoning, there are several problems, but the main problem is that it never considered Mr. Lopez's interests. It solely focused on the government's. And so when it denied Mr. Lopez's, or when it rejected his proffer, it specifically said, I rejected, this is at ER 33, I have rejected the ex-party offering because it is asking me to do that ex-party. There was absolutely nothing about Mr. Lopez's justification for sealing, no findings about whether it was compelling or not, it didn't engage in any balancing analysis. And then the government... What's the harm? What's the harm? He's going to make his defense in public at the trial. He is, Your Honor, and I think that's something that the district court failed to recognize, is that this doesn't remain sealed forever, and so if it's concerned about the government's ability to test this adversarially, they're going to be able to do that a few weeks later at trial. And in fact, here, when the government had the proffer at the motion hearing, and this is at ER 78 and 79, the government didn't even engage in any of that robust adversarial testing that the district court was so concerned about. They didn't cross him, they didn't test the veracity of it, they didn't say there wasn't enough evidence for a prima facie case. All they said is, we don't want to take a proffer, we want him to testify so that at trial we can engage in the adversarial process and impeach him on this. So they weren't concerned at all. What's wrong with that? Well, because it forced Mr. Lopez to decide before trial whether or not he was going to incriminate himself. He hasn't seen the government's case yet, he hasn't put on his own witnesses yet. He does have to give notice of his defense, doesn't he? He doesn't, Your Honor. Under Rule 12, you have to give notice of certain defenses, like alibi or insanity. But duress is excluded, and I think that's important. It's one of the types of defenses that defendants do not have to tell the government about ahead of time. And, you know, part of the harm here, too, is that there was an imbalance between the information that the parties were exchanging. The government doesn't have to give Mr. Lopez before trial all of its witnesses' anticipated testimony, all of the evidence that it's going to put on. And Mr. Lopez did. It was a three- to four-page detailed proffer of everything that he was going to testify to. And, in fact, the government didn't disclose what its rebuttal case was going to be, didn't sort of have this balanced exchange of information, surprised him with that rebuttal case at trial, and Mr. Lopez was at a serious disadvantage. His counsel was not able to investigate what the government's rebuttal witness was going to say. He could have talked to the wife and seen, maybe Mr. Lopez had a friend reach out to check on her, maybe he sent letters in lieu of jail calls, maybe he didn't have any money on his books to make those jail calls, but he wasn't able to counter that because the district court forced him to disclose the entirety of his case before trial. But the government didn't have to do the same thing. And so it not only required him to incriminate himself before trial and give up his Fifth Amendment rights in order to be able to assert his Sixth Amendment right to present a meaningful defense, but it also seriously disadvantaged him because it previewed his entire case for the government. Counsel Judge Gould, if I could interject with a question, please. Yes, Your Honor. This is the primary concern in my mind right now, though I haven't made any final judgment on this and won't until the argument is concluded and we confer. But a panel of the Ninth Circuit in that Carpenter case held that a defendant had not shown compelling reasons for keeping the duress proffer under seal and out of the public record, even though the defendant specifically complained about having to reveal case strategy and argued that public disclosure would be unconstitutional. But why isn't this case controlled by Carpenter? I think you earlier explained that you would distinguish Carpenter, but I'd like you to elaborate on how you distinguish it because I think it's a fairly steep hill to climb. Well, there's two reasons that Carpenter is distinguishable here, Your Honor. The first is I went back and looked at what she filed in district court, and her reasons for asking to seal were her lawyer thought, based on a criminal defense manual for criminal defense lawyers, that it was a best practice to ask to seal duress proffers. And the other reason was that she had ethical concerns. These were just sort of general, vague reasons to secretly seal a duress proffer. There was nothing specific to her case. In contrast, Lopez alleged that he had already been convicted by telling the government to assert a duress defense. And he also alleged that this was forcing him to give up his Fifth Amendment rights in exchange for his Sixth Amendment rights. And so he did allege that this was specifically harming him in his own case. And those reasons are at ER 28. He says he would suffer prejudice if forced to disclose the specifics of his defense pre-trial, and indeed he's already been prejudiced by the court's disclosure. And then he was being forced to choose between disclosing his testimony and presenting a duress defense. And so those are specific to his case, in contrast to Carpenter, which were just vague ethical and best practice concerns. But the other difference in our case with Carpenter is that Carpenter suffered absolutely no harm in unsealing her proffer. The government agreed not to read her proffer. And so she didn't really have a fair trial interest to balance against a public interest or the government's interest. Here, the government did read the proffer. And not only that, but went out and investigated the proffer, and then showed up at trial with a surprise rebuttal witness and rebuttal evidence that Mr. Lopez was not expecting and couldn't counter. And so there was a real harm. His fair trial interests were impacted, unlike in Carpenter. I'd like to reserve my time unless the court has further questions. Okay, thank you, counsel. Thank you. Okay, Mr. Janda for the appellee, United States. Thank you, Judge Gould, and may it please the court. Sean Janda for the United States. The district court here properly concluded, first, that Lopez had not presented sufficiently compelling case-specific reasons in favor of allowing him to proceed with his duress proffer on a sealed ex parte basis. And second, that Agent Pham's routine occupational questions did not violate Miranda. In addition, even if either of those determinations were erroneous, that error was harmless. Therefore, Lopez's conviction should be affirmed. Starting with the duress proffer issue, when Lopez requested to proceed with his duress proffer on a sealed ex parte basis, that request directly implicated the government's interests in a fair adversarial litigation and the integrity of the judicial process. Why, counsel, why? Because what Lopez was asking for was that the district court make a substantive evidentiary ruling without the benefit of adversarial presentation. And as this court recognized in Thompson, it's a fundamental principle of our judicial system that substantive rulings don't get made unless both parties have the opportunity to engage in adversarial litigation, have fair notice and the opportunity to respond. And so Lopez's proffer request directly implicated that interest. And the district court appropriately recognized that and determined that Lopez had not made the sort of compelling showing that this court has pointed to as necessary to overcome the presumption in favor of adversarial litigation. And I think that determination fell well within the court's broad case management discretion for at least two reasons. The first is that Lopez's proffer offered only generic conclusory allegations, talking about the sort of harm or prejudice that he would suffer, rather than the sorts of case specific reasons that this court has held are necessary to overcome the presumption in favor of access and the presumption in favor of adversarial litigation. What was the purpose of the proffer? Why was he proffering? To get an initial ruling whether the duress defense would stand? Yes, Your Honor. So this court has held that before a defendant may present evidence of duress at trial, he must first make out a prima facie showing that his duress defense as presented would meet the legal requirements for a duress defense. And the purpose of that is to avoid burdening the trial court and confusing the jury with evidence that ends up being ultimately irrelevant. And so just like the government has an interest at trial that's vindicated by that duress proffer requirement in not burdening the court and not confusing the jury, I think the government has a derivative interest in being able to participate in the proffer process in a meaningful way to ensure that the district court has all the relevant information and is able to make the best decision at the proffer stage. And so in this case, like I said, Lopez's proffer I think is materially indistinguishable from Carpenter's proffer. So the judge was unwilling to grant status to the duress defense unless all the details were laid out. And I think that's misused proposition that requiring the defendant to lay out all the parameters of the defense prejudiced him. It didn't have a similar requirement to the government in terms of rebuttal. So your honor, I think a couple of things on that. I think first is that Lopez was not forced to lay out all the details of his defense. He was just forced to provide sufficient information to allow the district court to determine that his duress defense would be legally sufficient. I don't know how he hits the sweet spot there. And that is the gist of counsel's complaint. That he had to put forth enough with enough specificity that the court could make a ruling about whether or not there was going to be his evidence amounted to a prima facie showing, right? That's correct, your honor. And I agree that Lopez has a legitimate interest in concealing his defense strategy from the government. I don't think anyone disputes that that's a legitimate interest. But I don't think it's the sort of compelling interest that can overcome the presumption in favor of adversarial litigation. But counsel, that's a conclusion. But if you could engage a bit, please, on this point. Opposing counsel's point is there was going to be litigation on this. And there was adversarial litigation on this at trial. So could you please speak to that point? Yes, your honor. So I think the whole point of the duress proffer requirement is a recognition by the Supreme Court and by this court that sort of the normal at trial adversarial litigation isn't appropriate in this context. Because it risks burdening the trial court and confusing the jury with evidence relating to duress that ends up being legally insufficient. I appreciate that. But, you know, we're asking a different question. I'm not going to push back on that point at all. But if you just take a step back, we're trying to figure out not whether he gets to win. It's just whether he gets to go forward. He has to make a proffer before he's even allowed to introduce this defense. And in order for the district court to decide that there's sufficient evidence to meet his prima facie burden, he's got to put some detail in there. Correct, your honor. So why isn't that property left to the trial court? So I think a couple of things on that, your honor. So first is, like I said, I think to the extent the government has an interest in not burdening the trial court and confusing the jury at trial, the government has a derivative interest in being able to normally participate in the pretrial proffer proceedings that will determine whether the jury might be confused and the trial court might be burdened with evidence to direct the trial. But then second, I think a very similar argument was made in Williams against Florida, which is a Supreme Court case that's cited on page 23 of our brief. And that was in the context of a state rule requiring pretrial disclosure of an alibi defense. And the defendant there, I think, said basically the same thing that Lopez had said here, which is that forcing him to disclose the defense pretrial imperiled his Fifth Amendment rights. And the Supreme Court's conclusion was that such a rule is permissible because there is no constitutional right to surprise the government at trial, to hold off on presenting your defense until we actually reach the trial stage. And I think here, just like those constitutional concerns weren't significant enough in Williams to overcome the state rule requiring pretrial disclosure of the alibi defense, I think here those constitutional concerns identified by Lopez aren't sufficiently compelling to overcome the presumption in favor of adversarial litigation. Counsel, on that point, if I may, opposing counsels pointed out that the rules don't require disclosure of this particular type of defense. Do you want to respond to that? Yes, Your Honor. I think we're not saying that the government has a substantive right to understand the details of the duress defense to enable us to investigate it, like with an alibi defense or insanity defense. Instead, we just want to apply the generally applicable neutral principle in favor of adversarial litigation. And so I think in this case, we just want to be able to participate in the proceedings. And that's a compelling interest that this court's repeatedly recognized. And I think in any event, I'm a little troubled by this. The district judge has the power to elicit more and more and more detail before making a determination that facts relating to duress may be allowed at trial. And the complaint is not so much about secrecy, I think, but the district judge really doesn't want to hear all this information ex parte for obvious reasons. I think the problem is the discretion of a district judge in relationship to how much information needs to be elicited before allowing the defense. And it's a discretionary issue. And our task is to say, is there an abuse of discretion? Your argument is that there was no abuse of discretion. Is that a fair summary? I think that's certainly correct, Your Honor. I think in this case, in fact, the district court didn't require a terribly, terribly detailed proffer. The district court didn't require Lopez to take the stand and testify as to what he would say at trial. I think it's just a short summary of what the details of his defense would be to ensure that those details, if presented at trial, would make out a legally sufficient duress defense. And I think at the absolute least, we know that the reasons presented here can't be compelling enough reasons because they're the sort of generic reasons that any defendant could be. I mean, so to the extent that the district court had a legal obligation to allow Lopez to present the proffer ex parte, I mean, any other defendant would have the exact same legal right to present the proffer ex parte. And that would turn all the presumptions this court has recognized in Carpenter, in Kamakana, in Thompson, all on their heads. And so I think in this case, the defendant just didn't put forward sufficiently case-specific compelling reasons of the sort that might support ceiling or ex parte litigation. And even if this court disagrees on that point, I think at the end of the day, the error ended up being harmless. The one piece of evidence that Lopez says is traceable to the disclosure of the duress proffer only reinforced other evidence that the government has already introduced. So the government had already introduced evidence to show that Lopez hadn't talked to or contacted his partner or his daughter in the month between the alleged kidnapping and his arrest. And the evidence that he claimed was traceable to the proffer just said, and also in the couple months after his arrest. And so I think this court can say with fair assurance that in the context of the trial, and given all the other events that we highlight in our brief that undercut Lopez's credibility in his duress defense, that that error was harmless. And so I see my time is expiring, so if the court has no further questions, do we ask for further time? Judge Gould, I have one question. Do you agree that the standard here is abuse of discretion and not de novo review? I agree with that, Your Honor. I think Carpenter lays out that standard clearly. Dave, thank you. So unless my colleagues have other questions for you, we'll proceed to the rebuttal argument from Ms. Hughes. Thank you, Your Honor. I just want to make two points. First, I want to address harmlessness. This actually, I think, was very prejudicial and did affect the verdict. While the government cites a lot of evidence in its brief that it claims was overwhelming, all of that evidence was consistent with Mr. Lopez's duress defense. And so the fact that he was driving a car, that it was full of drugs, that he was wearing his uniform, that he lied to the primary agent, all of those things were consistent with his duress defense. He testified how Toucan had told him to wear his uniform, say he was on his way to work, etc. The one piece of evidence that was inconsistent with his duress defense was the fact that although he was concerned about his wife and daughter, he hadn't called them in months since he'd been in jail. And so that had a large impact. It was the only thing that undercut his duress defense. And the government recognized that it had that impact because not only was that its entire rebuttal case, and it went to the trouble of pulling those jail calls and calling that officer to testify, but it closed on that point. So a couple examples. In ER 196, the government said the fact that he didn't try to contact his wife and daughter meant that his duress defense simply doesn't make sense. You don't check on the two people that are being threatened and that you aren't there to protect until March. And then again, in its rebuttal closing at ER 215, it argued that his duress defense was a lie and pointed out that he didn't try to contact his family after he was in jail and told the jury, why didn't those communications occur? Why aren't they here? Because they are not true. And so in addition to the fact that this was a surprise to him and he couldn't sort of mitigate it, the government really realized the impact of that at trial. It really undermines his duress defense. And then the second point that I want to make quickly is... May I ask this question? Is there any practice in California of requiring that a duress defense be in effect ventilated to the judge alone, ex parte? Is there a discretionary abuse because some practice in California was not followed? I don't believe there's a set, there's no local rule or set standard on this. I mean, I will tell you, I've practiced in the Southern District for a long time, and a lot of the district court judges allow defendants to make these parties ex parte. This district court is sort of an outlier and in fact has had a long-standing 15-year general policy that you cannot make a duress proffer ex parte. But that is sort of an outlier in the district. The last point I want to make is the government said that if this... The vice here is information about the duress defense is spread on the record so that the government could have access to it. Is that the point? Sort of, yes. The point is he has to put forth enough detail to satisfy that prima facie case, as Judge Kristen noted. And when he does that, he incriminates himself because he's got to admit all the elements of the offense when he does that. It's kind of inherent in requiring an advance notice of a defense. Pardon, Your Honor? The point that Mr. Johnson made was that the judge is entitled to know in advance about the parameters of a defense, even though there's no legal requirement that there be a notice of such a defense. The district judge has the discretion to conduct the trial fairly, avoid surprise, and regulate the introduction of evidence. And to do that, the judge requires the defendant to come forward with some kind of evidence that would justify a defense. So the question is whether that should be private, ex parte, or public. A district judge can be very uncomfortable with ex parte information. The judge gets compromised by the ex parte information. I can understand, as a district judge, why it would be uncomfortable for this district judge to get information about an important defense privately, ex parte, and then make a ruling on it. And I understand that, Your Honor, but again, this isn't going to remain ex parte and sealed forever. The time between the motion hearing and trial was less than four weeks. That's not the problem with ex parte. The contamination of ex parte is the very moment that there is an ex parte statement to the judge. That lingers. And then what happens if there's a variance between what the judge is told privately and what happens at the trial? Does the judge have to say anything about this? You're trapping the judge by an ex parte set of information. And I can understand why this district judge would say, I don't want to do that. I don't want any part of that. Well, I think I don't want to overstate the importance of this decision that the district court was making. This was just a legal finding of whether there was a prima facie case to go forward at trial. And if the district court's wrong about that, the evidence can be stricken later. The judge doesn't have to give an instruction. The jury can find that there was not enough to meet all the elements of duress. And so this is not sort of a permanent decision that the district court is making. This is just a legal call, a legal evidentiary call. And district courts make those all the time. And I would say, to your Honor's point about allowing the government to participate, the government doesn't really have a lot to do here. In Carpenter, the district court allowed the duress defense. The government didn't even read the proffer. They didn't participate in that. Here, the government did read the proffer but had absolutely nothing to say. They didn't challenge it at all. All they said is, we want to be able to impeach him at trial later if it turns out that there's a difference. So they relied on their adversarial trial rights. Nothing about pretrial adversarial process. And if I could just make this last point, Your Honor, because I think it ties in. The government said that if this reason is compelling enough, then any other defendant has the right to present an ex parte duress defense. And I just want to be clear, we're not arguing that we had a right to present an ex parte duress defense. We're arguing that the district court had to balance our justification against the government's or the public's reasoning. And so any other defendant, if they came forward and sought to seal their proffer on the basis that it would reveal confidential defense strategy, the court has some automatic right to then present their reasoning. Counsel, Judge Gould interjecting if I may. You're five minutes over your total time at this point. Thank you, Your Honor. In all fairness to Mr. Janda, which I'd like to conclude unless either of my colleagues. Judge Harcino, Judge Kirsten has a question for you. No questions. No, thank you, Counsel. Thank you, Counsel. I want to thank both counsel for their excellent advocacy presenting their cases to us. And the Lopez case shall now be submitted. Okay, thank you, Counsel. Thank you, Your Honors. Thank you, Your Honor.
judges: Gould, Christen, Hellerstein